UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 22 PM 10: 01

LORETTA G. WHYTE
CLERK

BARBARA ANN SCOTT PITRE,                          CIVIL ACTION
A/K/A BARBARA ANN SCOTT
VS.                                               NUMBER: 00-118
DEPUTY SHERIFF KIRK RODRIGUE,
DEPUTY SHERIFF J. PATRICK DeGRAVELLES,            SECTION: "K"
DEPUTY SHERIFF JULES TARULLO AND
SHERIFF CRAIG WEBRE,                              MAG. NUMBER: 5
PARISH OF LaFOURCHE
STATE OF LOUISIANA

## PLAINTIFF'S PROPOSED FINDINGS
## OF FACT & CONCLUSIONS OF LAW

NOW INTO COURT, through undersigned counsel, comes plaintiff, **BARBARA ANN**

**SCOTT PITRE, A/K/A BARBARA SCOTT,** who respectfully submits the following

suggested Findings of Fact and Conclusions of Law.

### PLAINTIFF'S PROPOSED FINDINGS OF FACT

1.     The writ of injunction dated September 22, 1999 directed to Alvin Legendre and Barbara

       Legendre was not effective toward Barbara Scott.

2.     Barbara Scott did not receive notice or service of the "protection order" as provided by

       law.

3.     Lafourche Parish Sheriff's Office Deputies Kirk Rodrigue, J.P. DeGravelles, and Jules

       Tarullo went to the plaintiff's residence at 709 Highway 307 in Thibodaux, Louisiana on

       the evening of January 14, 1999.

       A)     709 Highway 307, Thibodaux, Louisiana is Barbara Scott's permanent and

              official residence;

       B)     709 Highway 307 consist of two separate dwelling, a main home and a detached

              separate apartment;

Fee
Process
Dktd
CtRmDep
Doc.No.

C)   Alvin Legendre and Barbara Scott reside in the main house;

D)   Norman Legendre owns the property located at 709 Highway 307, Thibodaux;

E)   Norman Legendre resides in the attached apartment;

F)   Norman Legendre used a key to open the rear door of the separate residence of Alvin Legendre and Barbara Scott;

G)   Neither Norman Legendre, Alvin Legendre, or Barbara Scott gave consent for the deputies to enter the main residence;

H)   Alvin Legendre and Barbara Scott did not exit their residence at the time of their arrest;

I)   Lafourche Parish Sheriff's Office deputies arrested Barbara Scott inside her residence;

J)   While effecting the arrest inside the residence, the Lafourche Parish Sheriff's Office deputies used excessive force against Barbara Scott;

K)   While effecting the arrest inside the residence, the Lafourche Parish Office deputies did not use excessive force against Alvin Legendre;

L)   Office J.P. DeGravelles transported Barbara Scott to the Lafourche Parish detention center;

M)   Barbara Scott was booked into the Lafourche Parish Detention Center at approximately 8:57 o'clock p.m. on January 14, 1999; and

N)   Barbara Scott was released from the Lafourche Parish Detention Center at approximately 1:15 o'clock p.m. on January 15, 1999.

4.    Barbara Scott did not yell at Barbara Legendre while traveling in Alvin Legendre's truck in passing Barbara Legendre's driveway "I'll get you bitch. I'll get your ass for what you did."

5.    The Lafourche Parish Sheriff's Office deputies arrested Barbara Scott on January 14, 1999 for a violation of a protective order.

6.    The deputies did not obtain an arrest warrant prior to proceeding to Ms. Scott's residence.

7.    No exigent circumstances existed which would excuse the deputies from <u>not</u> obtaining an arrest warrant.

8.    The arrest of Barbara Scott was conducted without a warrant.

9.    The Lafourche Parish Sheriff's Office deputies did not have probable cause to arrest Barbara Scott.

10.    The Lafourche Parish Sheriff's Office deputies did not have reasonable cause to arrest without a warrant.

11.    Extingent circumstances did not exist at the time of the arrest of Barbara Scott.

12.    The deputies are familiar with and know what constitutes exigent circumstance in order to place someone under arrest without a warrant.

13.    The Lafourche Parish Sheriff's Office deputies knowingly violated the law.

14.    The Lafourche Parish Sheriff's Office deputies, in their normal course of duty and training, would know that "actual knowledge" of a protective order is not the legal standard.

15.    The Lafourche Parish Sheriff's Office deputies were within the course and scope of their employment under Sheriff Craig Webre.

3

16.    On January 14, 1999, at the time of the arrest, Barbara Scott did not complain about excessive force and/or physical injuries to her person out of fear for additional force being used against her.

17.    On January 14, 1999 during transport to the Lafourche Parish Detention Center Barbara Scott did not complain about excessive force and/or physical injuries to her person to the deputy which affected the excessive force against her out of fear for additional force being used against her.

18.    Barbara Scott was stripped searched at the Lafourche Parish Detention Center in violation of her constitutional rights.

19.    Barbara Scott was physically and mentally injured as a result of the actions taken by the Lafourche Parish Sheriff's Office deputies.

## CONCLUSIONS OF LAW

1.    A protective order was not effective as legally binding on Barbara Scott.

2.    Barbara Scott's proported statement would not constitute her being an "agent" of Alvin Legendre with respect to the protective order in the domestic matter entitled, <u>Barbara Legendre v. Alvin Legendre</u>, No. 84602 on the docket of the 17th Judicial District Court, Parish of Lafourche, State of Louisiana.

3.    The Fourth Amendment generally prohibits warrantless entries of a person home to make an arrest.

4.    In the absence of exigent circumstances, entry of law enforcement officers into the private home for the purpose of making an arrest is barred by the Fourth Amendment.

5.    Given the circumstances and facts, the officers had ample alternative to obtain a warrant in order to effect the arrest.

6.    The defendants have not met the burden of establishing by preponderance of evidence that its entry into Ms. Scott's home was justified by exigent circumstances.

7.    Consent was not given to the deputies to enter Ms. Scott's residence.

8.    The defendants use of excessive force was not reasonable in light of the facts and circumstances confronting them.

9.    A physical attack on a private citizen by a police officer, absent a valid arrest, constitutes battery.

10.    Pursuant to Louisiana law, the deputies' actions resulted in the tort of false arrest being committed against Ms. Scott.

11.    The deputies, in violating Ms. Scott's federal constitutional guarantees against unreasonable seizure also violated Ms. Scott's state constitutional rights against invasion of her privacy under LSA-Const. Art. 1.

12.    Deputy Rodrigue, Deputy DeGravelles and Deputy Tarullo were acting within the course and scope of their respective employment with the Sheriff's Office.

13.    The deputies acted with careless disregard of Barbara Scott's constitutional rights.

14.    The deputies' conduct can only be explained as shocking to the conscious

15.    The deputies are not entitled to qualified immunity.

16.    The conduct of the deputies was so extreme and outrageous as to shock the conscious of a reasonably objective person.

17.    Ms. Scott is entitled to damages for physical pain and suffering, mental anguish, under Louisiana Civil Code Article 2315, et seq.

18.   Ms. Scott is entitled to punitive damages under §1983 against the defendants and against the defendants in their individual capacity as their conduct involved reckless and callous indifference to her federally protective rights.

19.   Ms. Scott is entitled to attorney's fees and expenses pursuant to the Civil Rights Attorney's Fees Award Act of 1976.

20.   Ms. Scott is entitled to recover all reasonable out-of-pocket expenses, included charges for photocopying, paralegal assistance, travel and telephone charges under 42 U.S.C. § 1988.

21.   Ms. Scott was falsely arrested.

22.   Ms. Scott sought treatment with Dr. Joseph Palotta on May 14, 1999. His diagnosis was a post-traumatic stress disorder and major depressive disorder.

23.   Ms. Scott sought treatment with Dr. Bradley J. Bartholomew on June 30, 1999 complaining of consistent burning, starting in her neck and going all the way down to her lower back and tailbone area.

24.   On July 1, 1999, she again saw Dr. Palotta experiencing depression and anxiety, as well as still suffering from nightmares.

25.   On July 9, 1999, Ms. Scott was seen at Terrebonne General Medical Center Emergency Room complaining of spinal pain.

26.   On July 14, 1999, she again saw Dr. Bartholomew. He recommended a cervical and lumbar MRI.

27.   On July 20, 1999, an MRI of both the lumbar spine and the cervical spine was conducted.

28.   On July 29, 1999, Ms. Scott saw Dr. Palotta again complaining of depression, anxiety and nightmares. Dr. Palotta prescribed Effexor and Trazandone.

29. On July 30, 1999, Ms. Scott sought treatment with Dr. Bartholomew. His impression was a soft tissue sprain and he continued therapy.

30. From August 31, 1999 until September 20, 1999, Ms. Scott received physical therapy treatment for generalized pain and cervical thoracic and lumbar spine.

31. Ms. Scott continued psychiatric treatment with Dr. Palotta through December of 2000. Her depression and anxiety remained. As of date, Ms. Scott continues her medications of Effexor, Trazandone, Valium, and Wellburtrin.

32. On January 14, 2000, Ms. Scott saw Dr. Bartholomew complaining of back and neck pain. He recommended that she see Dr. Charles Aprill for facet blocks.

33. On July 17, 2000, Ms. Scott saw Dr. Aprill and received a lumbar facet injection at L3-4 left, L4-5 bilaterally, and L5-S1 bilaterally.

34. On August 3, 2000, Ms. Scott again saw Dr. Bartholomew. He discussed a pain management program and referred Ms. Scott to Dr. Irwin at LSU Physical Medicine & Rehab Spine Center.

35. On August 3, 2000, Dr. Bartholomew released Ms. Scott from treatment.

36. On October 3, 2000, Ms. Scott saw Dr. Irwin and was evaluated for chronic pain. He prescribed Buspar and counseling to address the issues.

37. Dr. Charles Aprill's medical bills for dates of service from July 17, 2000 through December 18, 2000 total $2,694.66.

38. Dr. Bradley Bartholomew's medical bills for dates of service from June 30, 1999 through August 3, 2000 total $890.00

39. Dr. Robert Irwin's medical bills for dates of service from October 3, 2000 through November 13, 2000 total $285.00

Case 2:00-cv-00118-SRD-ALC    Document 32    Filed 01/22/2001    Page 8 of 9

40. Kenner Regional Medical Center bills for treatment on October 3, 2000 total $120.74.

41. Dr. Joseph Palotta's medical bills for dates of service from May 14, 1999 through November 8, 2000 total $2,580.00.

42. Terrebonne General Medical Center's medical bills for treatment on July 9, 2000 total $203.10.

43. Terrebonne General Medical Center's medical bills for treatment on July 20, 1999 for two MRI's total $2,087.25.

44. Thibodaux General Medical Center Physical Therapy's medical bills for treatment from August 13, 1999 through October 15, 1999 total $2,291.40.

45. Prescriptions and pharmacy bills for medications prescribed from October 31, 2000 through December 12, 2000 total $596.31.

46. Ms. Scott's total medical bills to date total $11,749.46.

Respectfully submitted,

FAVRET, DEMAREST, RUSSO & LUTKEWITTE
A Professional Law Corporation

J. PAUL DEMAREST, No. 4855
ELIA DIAZ-YAEGER, No. 24635
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone: (504) 561-1006
Facsimile: (504) 523-0699

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing has been served on opposing counsel by facsimile and by depositing same in the U.S. mail, postage prepaid, this the 22nd day of January, 2001.

J. PAUL DEMAREST