FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 OCT -9 AM 10: 53

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BARBARA ANN SCOTT PITRE, A/K/A BARBARA ANN SCOTT | CIVIL ACTION |
| VERSUS | CASE NO. 00-0118 |
| DEPUTY SHERIFF KIRK RODRIGUE, DEPUTY SHERIFF J. P. DeGRAVELLES, DEPUTY JULES TARULLO AND SHERIFF CRAIG WEBRE, PARISH OF LAFOURCHE STATE OF LOUISIANA | SECT. K MAG. 5 |

### POST-TRIAL MEMORANDUM

NOW INTO COURT, through undersigned counsel, comes defendants Deputy Sheriff Kirk Rodrigue, Deputy Sheriff J. P. DeGravelles, Deputy Sheriff Jules Tarullo, Sheriff Craig Webre, and Coregis Insurance Company who respectfully submit this Memorandum.

### I.
### PLAINTIFF'S FEDERAL CLAIMS AGAINST SHERIFF CRAIG WEBRE

On October 18, 2000, United States Magistrate Judge Alma L. Chasez granted Sheriff Craig Webre's motion seeking the dismissal of all of plaintiff's federal claims against him. The Date of Entry of that Order was October 23, 2000. There was no appeal from that order. Thus, there are no federal claims pending against Sheriff Webre.

1

## II.
## PLAINTIFF'S FEDERAL AND STATE CLAIMS
## AGAINST DEPUTY JULES TARULLO

There is no credible evidence that Deputy Jules Tarullo violated any of Barbara Scott Pitre's federal or state constitutional rights. Nor is there any credible evidence relating to his falsely arresting, physically assaulting, verbally assaulting, strip searching, physically abusing or mentally abusing complainant. Moreover, Barbara Scott Pitre did not produce credible evidence to establish that he conspired, or acted in concert, with any other person in regards to any of the complainant's allegations.

There should be judgment in favor of Deputy Jules Tarullo and against complainant, Barbara Scott Pitre, dismissing all of her claims against him.

## III.
## PLAINTIFF'S CLAIMS ARISING FROM STRIP SEARCH

There is absolutely no evidence indicating that Deputy Kirk Rodrigue or Deputy J.P. DeGravelles participated in, or caused anyone else to conduct, a strip search of Barbara Scott Pitre. Moreover, there is no evidence that any other person conspired, or acted in concert, with either of them in connection with any strip search of complainant.

There should be judgment in favor of the defendants and against complainant, Barbara Scott Pitre, dismissing any and all federal and state claims against them arising from or in connection with a strip search of complainant.

## IV.
## PLAINTIFF'S CLAIMS REGARDING EXCESSIVE FORCE

In <u>Kyle v. City of New Orleans</u>, 353 So. 2d 969 (La. 1977) the court found that the degree of force employed by the police in making an arrest is a factual issue.

There is no credible evidence that Deputy Kirk Rodrigue and Deputy J. P. DeGravelles exerted excessive force against complainant.

Both officers testified that Barbara Scott Pitre did not resist them in any manner at any instance at the time of her arrest. Both officers denied using any physical force on Barbara Scott Pitre at the time of her arrest.

There is no Lafourche Parish Detention Center record of any complaint by Barbara Scott Pitre about the use of excessive force against her. There is no reference to any use of force against complainant in the March 3, 1999 Emergency Room record at Leonard Chabert Medical Center. There is no evidence that, when the District Attorney met with Alvin Legendre and complainant about the charges for their violation of La. R.S. 14:79, any complaint was lodged with the District Attorney about any deputy using excessive force against Barbara Scott Pitre. There is no evidence that Barbara Scott Pitre complained to Sheriff Webre about any deputy exerting excessive force against complainant at the time of her arrest.

There is no record of any complaint by complainant until after she retained legal counsel.

The first written record of complaint of excessive force by Barbara Scott Pitre arises from her office visit to Dr. Palotta on May 14, 1999. His notes document complaints of force against her.

Thereafter, complainant saw other medical health care providers (Dr. Bradley J. Bartholomew, Dr. Charles April, and Dr. Robert W. Irwin) and told them varying versions of the alleged physical encounter with the deputies.

At no time after the night of her arrest has any health care provider observed any objective medical evidence corroborating complainant's allegations of having been grabbed by the throat, lifted up off of her feet by about a foot or more and then dropped upon her buttock and outstretched legs. Moreover, Barbara Scott Pitre's subjective complaints are the only evidence that appears to support the health care providers examinations and treatments.

Defendants further aver that the alleged brutal physical attack could not possibly have occurred in the hallway. The hallway's dimensions simply did not allow adequate physical space to accommodate any physical attack such as that described by Barbara Scott Pitre.

Defendants show that the testimony of Barbara Scott Pitre is not worthy of belief. Additionally, Barbara Scott Pitre has no excuse for not being truthful. While the evidence at trial shows that Barbara Scott Pitre is mentally challenged, there was no testimony to establish that she is incapable of telling the truth or that she has diminished mental capacity to such a degree as to inhibit her from accurately relating events.

Defendants posit that the credible testimony of the deputies, the lack of objective corroborative medical evidence and the complainant's implausible testimony regarding the vicious physical attack and the place where it occurred negates complainant's allegations of a brutal physical attack. Defendants urge this Court to find that no physical attack occurred and that Barbara Scott Pitre was not physically injured by the deputies.

There should be judgment in favor of Deputy Kirk Rodrigue and Deputy J.P. DeGravelles and against complainant, Barbara Scott Pitre, dismissing any and all federal and state claims against them arising from or in connection with alleged excessive force.

## V.
## CREDIBILITY

There is good reason to question the trustworthiness and reliability of Barbara Scott Pitre and Alvin Legendre. Throughout the trial, individually and together, their sworn statements demonstrated a lack of testimonial integrity. Their credibility is, of course, a pivotal underpinning in this case inasmuch as whether or not Barbara Scott Pitre was falsely arrested is to be determined based on who and what the court believes. The following illustrates some of the testimonial areas.

Alvin Legendre testified that he left the Sheriff's Office for medical reasons before admitting under cross-examination that he had chosen to resign rather than be fired for neglect of duty and for intentional misrepresentations to his superior in the line of duty.

Alvin Legendre said at trial that he saw many more deputies at his house that night than the three defendants. The testimony of the Sheriff's Office Patrol shift supervisor and the Sheriff's Office records contradicted his testimony.

Alvin Legendre stated that he clearly heard shotguns but did not hear any knocking or banging on the house's doors.

Alvin Legendre testified in graphic detail about the alleged vicious physical attack on Barbara Scott Pitre in the hallway. He described how she was dropped to the floor and how she landed. The hallway was not big enough to allow the attack.

Barbara Scott Pitre testified that both she and Alvin were in bed watching television when they first heard something at the back door. Alvin testified that he was alone and Barbara was in the bathroom.

In her court testimony, Barbara Scott Pitre claimed that the deputies attacked her before she went to change her clothing. However, in her deposition she stated that it was after she came out of the bathroom that the deputies attacked her. (Deposition of Barbara Scott Pitre. P. 59-63, lines 7-19)

Barbara Pitre testified that she had no recollection of any back condition prior to this alleged incident. However, the Leonard J. Chabert medical records of her October 6, 1996 emergency room visit indicated that she had scoliosis.

Defendants posit that the testimonies of Barbara Scott Pitre and Alvin Legendre are highly suspect and should not be given any credence.

## VI.
## PLAINTIFF'S CLAIMS REGARDING FALSE ARREST

Barbara Scott Pitre alleges that she was falsely arrested at her residence when Deputy Kirk Rodrigue and Deputy J.P. DeGravelles forced their way into her house, arrested her on an alleged charge of violation of a protective order under La. R.S. 14:79, which was totally fabricated and false, and that the said defendants had absolutely no reason to arrest here and to incarcerate her.

6

These accusations are alleged to be violations of the Constitution of the United States and of the Constitution of the State of Louisiana.

### FEDERAL

The Fourth Amendment to the U.S. Constitution states, in pertinent part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated..." U.S. Const. Amend. IV.

The right to be free from an illegal arrest is a right secured by the Constitution. Martin v. Thomas, 973 F.2d 449, 453 (5th Cir. 1992).

The "touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991); Ohio v. Robinette, 519 U.S. 33, 39 (1996). Reasonableness is measured objectively by the totality of the circumstances. Robinette, 519 U.S. at 39. In suits alleging illegal arrest, qualified immunity is decided on whether a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. Mills v. Mabile, 1996 WL 39420 at 3 (E.D.La. 1996); Gibson v. Rich, 44 F. 3d 274, 277 (5th Cir.1995). No officer of the law should fear that doing his duty in good faith will subject him to liability. Gibson v. State, 758 So. 2d 782, 788 (La. 2000).

Qualified immunity is generally given to those government officials that perform discretionary functions, within their employment. Wilson v. Lane, 119 S.Ct. 1692, 1696 (1999); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In a defense of qualified immunity, the court must decide whether the defendant's conduct was objectively reasonable in the context of clearly established rules at the time of the incident. Spann v.

Rainey, 987 F. 2d 1110, 1114 (5th Cir. 1993); Jones v. City of Jackson, et al., 203 F. 3d 875, 879 (5th Cir. 2000).

This decision, inter alia, rests on whether the action that the official took fashioned "objective legal reasonableness". Anderson v. Creighton, 483 U.S. 635, 639 (1987); Wilson, 119 S.Ct. at 1699. In other words, a reasonable official would understand the correct action to be taken in the situation in reference to pre-existing law. Anderson, 483 U.S. at 640; Wilson, 119 S.Ct. at 1699. In suits alleging illegal arrests, qualified immunity is determined on whether a reasonable officer could have believed the arrest to be lawful, under clearly established law and the information the officer possessed. Gibson v. Rich, 44 F.3d at 277; Mills, 1996 WL 39420 at 2. The qualified immunity defense, "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Gibson v. Rich, 44 F.3d at 277; *quoting* Hunter v. Bryant, 112 S. Ct. 534, 537 (1986).

The evidence adduced at trial shows that Deputy Kirk Rodrigue and Deputy J.P. DeGravelles are not plainly incompetent. The same evidence also does not support a finding that either deputy knowingly violated the law. Quite the contrary, the record shows that each was a thoroughly prepared, P.O.S.T. certified and experienced law enforcement officer.

The evidence adduced at trial establish that Deputy J.P. DeGravelles and Deputy Kirk Rodrigue properly exercised their discretion when they lawfully arrested Alvin Legendre.

Defendants further posit that their arrest of Barbara Scott Pitre was objectively reasonable in the context of clearly established rules at the time of the incident

The record shows that at the time of the arrest, the following circumstances existed.

1. Deputy J.P. DeGravelles, with assistance from Deputy Kirk Rodrigue, and Deputy Jules Tarullo, was responding to a call for a violation of a protective order at the residence of Barbara Legendre.

2. Earlier that day prior to receiving this call, Officer J. P. DeGravelles spoke with deputy Mike Clement at their shift change. Deputy Clement informed him that morning that Alvin Legendre had received a citation for "Entering onto Property after Being Forbidden" from Deputy Lauren Chiasson for his having gone to his former residence in violation of a court order, and that in her report Deputy Chiasson wrote that Barbara Pitre was present when Alvin received the citation. Deputy Clement further advised DeGravelles that, after he had heard what had happened with Deputy Chiasson, he had gone to Alvin Legendre's residence as a friend to advise him not to return to Barbara Legendre's home. Deputy Clement also reported that when he was about to leave, Alvin told him that, if any officers had to come back to his residence for any reason, they better not come alone. He was, also, informed that Barbara Pitre was present during the conversation between Deputy Clement and Alvin Legendre.

3. Deputy DeGravelles had also had a conversation with Deputy Keana Lewis, who was part of the Victim's Assistance division of the Sheriff's Office, and who informed him that she had taken Barbara Legendre to Judge Simpson's office that day in order to

9

verify the validity of her protective order. Keana Lewis told Deputy DeGravelles that the protective order remained in effect and was enforceable.

4. When Deputy DeGravelles arrived at Barbara Legendre's residence, he found her visibly shaken and afraid.

5. Barbara Legendre gave Deputy DeGravelles a statement attesting to the actions of Alvin Legendre and Barbara Scott Pitre.

6. He obtained a copy of the protective order from Barbara Legendre.

7. He read and understood that protective order.

8. Deputy DeGravelles had knowledge of La. Rev. Stat. §14:79.

At the trial Officer J.P. DeGravelles testified that he believed that the facts supported a finding of probable cause regarding Alvin Legendre's violating the protective order. He further believed that Barbara Pitre acted on Alvin Legendre's behalf as his agent and or representative when she threatened Barbara Legendre. Thus, he believed that the facts supported a finding that probable cause existed in regards to Barbara Pitre's violating the protective order by threatening Barbara Legendre for and on behalf of Alvin Legendre. Finally, he believed that La. Rev. Stat. §14:79 gave him the authority to arrest.

Defendants aver that they are entitled to qualified immunity in that they both used their discretion and executed what they reasonably believed to be the lawful arrest of Alvin Legendre and of Barbara Pitre, as any reasonable officer under the same situation would have.

There should be judgment in favor of Deputy J.P. DeGravelles and Deputy Kirk Rodrigue and against complainant, Barbara Scott Pitre, dismissing her federal claims against them for illegal arrest.

## STATE

Under Louisiana law the tort of false arrest has two essential elements (1) detention of the person and (2) the unlawfulness of such detention. <u>Mills v. Mabile</u>, 1996 WL 39420, at 4; <u>Touchton v. Kroger Co.</u>, 512 So. 2d 520, 524 (La. App. 3d Cir. 1987). The detention is unlawful if it is made without the color of legal authority and the burden is on the plaintiff to prove that the arrest was made without such authority. <u>Id.</u>

No officer of the law should fear that doing his duty in good faith will subject him to liability <u>Gibson v. State</u>, 758 So.2d at 788. An officer satisfies his duty of good faith in making an arrest if the arrest is based on probable cause. <u>Id</u>. Probable cause exists when the facts and circumstances within the arresting officer's knowledge, on which he has reasonable and trustworthy information, are sufficient to justify an average caution in the belief that the arrestee has committed or is committing an offense. <u>Gibson v. State</u>, 758 So. 2d at 788; See also <u>Beck v. Ohio</u>, 379 U.S. 89, 85 S.Ct. 223, 13 L. Ed 2d 142 (1964); <u>Miller v. East Baton Rouge Parish Sheriff's Dep't</u>, 511 So.2d 446, 452-53 (La. 1987); <u>State v. Wilson</u>, 467 So.2d 503 (La. 1985). The probable cause standard recognizes that a degree of uncertainty may exist and an officer need not have sufficient proof to convict but must possess more than a mere suspicion. <u>Gibson v. State</u>, 758 So. 2d at 788; See also <u>State v. Guidry</u>, 388 So. 2d 797 (La. 1980); <u>State v. Lehnen</u>, 403 So. 2d 683, 687 (La. 1981); <u>State v. Hebert</u>, 351 So. 2d 434 (La. 1977).

11

In this case, Barbara Legendre's testimony reflects that her ex-husband Alvin Legendre had been harassing her for some time. She wanted him to leave her alone. On the day of the arrest she had even verified the validity of her protective order. On the evening of January 14, 1999 when Barbara Pitre yelled at her from Alvin's truck, she was scared. She called the Sheriff's Office. After getting a statement from Barbara Legendre, Deputy J.P. DeGravelles, with assistance from Deputy Kirk Rodrigue and Deputy Jules Tarullo, went to the home of Alvin Legendre. Although the deputies announced their presence as they knocked on the door, no one answered it. After Norman Legendre unlocked the door and both Alvin Legendre and Barbara Pitre came out of the home, the deputies decided to arrest them.

For the same reasons that they have urged this Court to find that they are entitled to qualified immunity, defendants ask this Court to find that they acted upon probable cause when they arrested Barbara Scott Pitre. Defendants aver that the facts and circumstances within their knowledge at the time of the arrest were based on reasonable and trustworthy information, and that it was sufficient to justify an average caution in the belief that the arrestee had committed the offense.

## WARRANTLESS ARREST FOR MISDEMEANORS

The general rule for the validity of a warrantless arrest is to be determined by state law so long as that law comports with constitutional standards. Lawrence v. Henderson, 344 F. Supp. 1287, 1290 (E.D. La. 1972). Although the court in Lawrence v. Henderson, never qualified the constitutionality of La. Code of Criminal Procedure Art. 213(3), they recognized it as a possible standard in determining whether probable cause

existed in a warrantless arrest situation. Id. at 1291. In that case, the court proclaimed that in Louisiana an officer probably can arrest someone for committing a misdemeanor out of his presence if he has reasonable cause to believe the person is guilty of committing a crime, as advised under La. Code of Criminal Procedure Article 213(3), without a warrant. Id.

The Court in State v. Brown, 464 So. 2d 861, 862 (La. App. 5th Cir. 1985) found that the arresting officer, had reasonable cause to believe a crime had taken place and was correct in making an arrest for Disturbing the Peace even though the alleged crime was committed outside of the presence of the arresting officer.

ARREST WITHOUT A WARRANT

Without exigent circumstances, the Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution of 1974 prohibits the police from making a warrantless or non-consensual entry into a suspect's home to make an arrest even if probable cause to make an arrest exists. State v. Cantanese, Jr., 493 So. 2d 725, 727 (La. App. 2nd Cir. 9/18/86); Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371, 63 L.Ed. 2d 639 (1980).

Norman Legendre told the officers that the house was his, and he unlocked the door with his own key.

The defendants testified that when he opened the door that Barbara Scott Pitre and Alvin Legendre were behind it. They testified that the two came out of the house voluntarily. However, Barbara Pitre and Alvin Legendre claim that the deputies forced their way into their home. There was no testimony of damage to the house or the door.

Defendants stated that the arrests were made outside of the house, while Alvin Legendre and Barbara Scott Pitre testified that they were arrested inside the house. Defendants urge this Court to believe their description of the arrest due to the propensity of the complainant and her paramour, Alvin Legendre, for prevarication.

There should be judgment in favor of Deputy J.P. DeGravelles and Deputy Kirk Rodrigue and against complainant, Barbara Scott Pitre, dismissing her claims against them for false arrest.

## VII.
## ATTORNEY'S FEES AND PUNITIVE DAMAGES

Where no defendant has been cast in Judgment for a violation of 42 USC 1983, no attorney's fees and or punitive damages should be awarded.

## VIII.
## CONCLUSION

There should be judgment:

1. **In favor of Deputy Jules Tarullo and against complainant, Barbara Scott Pitre**, dismissing all of her claims against him.

2. **In favor of Deputy Kirk Rodrigue and Deputy J.P. DeGravelles and against complainant, Barbara Scott Pitre**, dismissing any and all federal and state claims against them arising from or in connection with a strip search of complainant.

3. **In favor of Deputy Kirk Rodrigue and Deputy J.P. DeGravelles and against complainant, Barbara Scott Pitre**, dismissing any and all federal and state claims against them arising from or in connection with allegations of excessive force.

4.  **In favor of Deputy Kirk Rodrigue and Deputy J.P. DeGravelles and against complainant, Barbara Scott Pitre,** dismissing any and all federal and state claims against them arising from or in connection with allegations of illegal arrest and or false arrest.

5.  In favor of defendants and against complainant for all just and equitable relief allowed by law.

BY: _____
DONALD F. HARANG, JR. # 6531
HARANG LAW FIRM
(A PROFESSIONAL LAW CORPORATION)
P.O. DRAWER 340
LAROSE, LOUISIANA 70373
(504) 693-7830

### CERTIFICATE OF SERVICE

I do hereby certify that I have on this 22nd day of June, 2001,
served a copy of the foregoing pleading on all opposing counsel,
by telefax and by U.S. Mail, postage prepaid.

_____
DONALD F. HARANG, JR.